202 P.3d 596

**SI–NOR, INC., Appellant–Appellant,**

v.

**DIRECTOR, DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, State of Hawai'i, Appellee/Agency–Appellee.**

**Director, Department of Labor and Industrial Relations, Complainant/Appellant–Appellee,**

v.

**Si–Nor, Inc., Respondent/Appellee–Appellant,**

and

**Hawai'i Labor Relations Board, Appellee–Appellee.**

**No. 27304.**

Intermediate Court of Appeals of Hawai'i.

Feb. 26, 2009.

Preston A. Gima, Honolulu, on the briefs, for Appellant–Appellant.

Frances E.H. Lum, J. Gerard Lam, Deputy Attorneys General, Dept. of Attorney General, State of Hawai'i, on the briefs, for Appellee/Agency–Appellee.

NAKAMURA, Presiding Judge, and LEONARD, J.; and FUJISE, J., Concurring and Dissenting Separately.

Opinion of the Court by NAKAMURA, J.

In this secondary appeal, Si–Nor, Inc. (Si–Nor) appeals from the April 20, 2005, Final Judgment entered in Civil Nos. 04–1–1844 and 04–1–1847 in favor of the Director of the Department of Labor and Industrial Relations (Director). The Circuit Court of the First Circuit (circuit court)[1] ruled that it lacked jurisdiction to hear the consolidated appeals because the Hawai'i Labor Relations Board (HLRB), which issued the underlying decision, lacked jurisdiction to hear the case.[2] The circuit court concluded that the HLRB lacked jurisdiction because Si–Nor did not file a notice contesting the citation issued by the Director in a timely manner.

We hold that the circuit court erred in dismissing the consolidated appeals for lack of jurisdiction. Si–Nor submitted a notice of contest by facsimile transmission which was received by the Director one day before the filing deadline. The next day, Si–Nor mailed an original notice of contest before the expi-

---

1. The Honorable Eden E. Hifo presided.

2. Both Si–Nor and the Director appealed the decision of the HLRB to the circuit court, and the circuit court consolidated the appeals. The HLRB participated as an appellee in the consoli-

dated appeals before the circuit court. The HLRB did not appeal from the circuit court's Final Judgment or submit a brief in Si–Nor's instant secondary appeal before this court.

ration of the deadline which apparently was not received by the Director. Si–Nor subsequently mailed a substitute notice of contest which was received by the Director one week after the deadline. We conclude that although Si–Nor's submission of the notice of contest by facsimile transmission did not constitute a timely filing, Si–Nor satisfied the filing requirement by mailing an original notice of contest before the filing deadline. Thus, the HLRB and in turn the circuit court had jurisdiction over this case.

## I. BACKGROUND

### A. Facts

On October 4, 2002, Charles K. Ke-a filed a workplace violence complaint with the Hawai'i Occupational Safety and Health Division (HIOSH) of the Department of Labor and Industrial Relations (DLIR) against Si–Nor, a refuse collection and recycling company incorporated in California. On October 9, 2002, Hervier Messier (Messier), a HIOSH compliance officer, conducted an inspection at Si–Nor's work site, described as a baseyard or parking lot, located in Kapolei, Hawai'i. During the inspection, Messier met with Si–Nor's employee, Ryan Hamili (Hamili), and requested documents from Si–Nor through Hamili.

Hamili was Si–Nor's senior project manager in Hawai'i, and he identified himself as Si–Nor's local company representative. Though Hamili was not considered part of management by Si–Nor,[3] Hamili was designated as a supervisor and was responsible for all aspects of operations, which included hiring, training, scheduling, verifying time sheets, handling any problems employees encountered, disciplining, terminating, receiving complaints from customers, and ensuring the performance of Si–Nor's contracts. Hamili's position was Si–Nor's highest ranking posi-

tion in Hawai'i. Hamili reported directly to Si–Nor's President, Silus Ugorji, and Si–Nor's Vice–President, Anthony Uwakwe (Uwakwe), who were both based on the mainland.

In the course of the inspection, Messier purportedly asked Hamili for Si–Nor's mailing address. Hamili responded by giving Messier Hamili's Wahiawā, Hawai'i home address. Hamili had no definitive recollection with regard to Messier's request[4] but agreed that if he gave Messier a local address, it was Hamili's home address. It appears that Si–Nor did not have a business office in Hawai'i. Si–Nor corresponded with Hamili via his home address or the "FedEx" office. For example, Si–Nor mailed employee paychecks to Hamili's home for Hamili to distribute to its local employees.

During the investigation, Messier asked Hamili for documents from Si–Nor and Hamili referred Messier to Uwakwe. Uwakwe indicated to Messier that Uwakwe would send certain of the requested documents by mail to Hamili. When the documents Messier requested were not produced, HIOSH issued an administrative subpoena for the documents which was served on Hamili. In response to the subpoena, Hamili delivered two of the five subpoenaed items to HIOSH.

On November 15, 2002, the Director, through HIOSH, issued a Citation and Notification of Penalty (Citation) to Si–Nor for safety violations. The Citation was mailed to Hamili's home address by certified mail. According to Hamili, his girlfriend, Desiree Rilveria (Rilveria), signed the return receipt and gave the Citation to Hamili. The return receipt reflects that delivery was made on November 16, 2002. Hamili packaged the Citation for delivery to Uwakwe and gave the package to his co-worker, Chad Pasquin, to send via FedEx. However, Hamili later learned that the package was not actually

---

**3.** Hamili, on the other hand, testified that he considered himself part of "the management or supervisory team that was here for the Hawaii operations."

**4.** During questioning by Si–Nor's counsel during Hamili's deposition, Hamili stated:

Q: Do you recall him asking—ever asking you for Si–Nor's address?

A: Not that I remember. He just needed an address to send forms to me.

Q: So he asked you for your address, correct?

A: I don't remember. But he asked me how can I receive forms that he needed to be sent to me.

Q: How you could receive forms, but not how Si–Nor could receive forms, correct?

A: I don't recall.

sent out for some time. Uwakwe received the Citation on December 5, 2002.

Uwakwe, who was trained as a lawyer in his birth-country Nigeria, testified that, "After I read [the Citation], I looked at the deadline because the thing had been [sic] almost expired." Uwakwe immediately faxed a letter to HIOSH notifying HIOSH that Si–Nor was contesting the Citation. It is undisputed that HIOSH received Uwakwe's letter through facsimile transmission on December 5, 2002. HIOSH called Si–Nor's office in California and left a message acknowledging receipt of the facsimile notice of contest, but instructing Si–Nor to send the original notice of contest by mail, postmarked no later than midnight on December 6, 2002.

In the morning on December 6, 2002, Uwakwe played the telephone message from HIOSH. On the same day, after calling HIOSH to confirm the message, Uwakwe "put the original copy of the fax I had sent in an envelope and sent it out by mail to HIOSH." Specifically, Uwakwe placed the envelope in Si–Nor's "outgoing mailbox," located outside his office near the receptionist's desk, and when he left for lunch at about 12:15, the outgoing mailbox was empty and the incoming mail had arrived. This signified to Uwakwe that the "mailman" had come and taken the HIOSH envelope. For reasons unknown, the HIOSH staff could not find the notice of contest Uwakwe said he mailed.

On December 12, 2002, Si–Nor's Hawai'i attorney faxed and mailed another letter contesting the Citation to HIOSH. The letter stated, "Please consider this notification that Si–Nor, Inc. intends to dispute and will contest the Citation and/or any other citations and notifications of penalty issued by your office against Si–Nor within the last thirty (30) days." HIOSH received the original of this letter by mail on December 13, 2002.

## B. HLRB Proceedings

On February 25, 2003, HIOSH notified Si–Nor's counsel that HIOSH was transmitting Si–Nor's "untimely" notice of contest to the HLRB. HIOSH transmitted the case and related documents to the HLRB. On May 27, 2003, the Director filed a "Motion to Dismiss for Untimely Notice of Contest" (Motion to Dismiss). The Director argued that Si–Nor failed to timely file a notice of contest because a facsimile-notice is not allowed under Hawaii Revised Statutes (HRS) § 396–11(a) (1993) [5] or any administrative rule.

On June 13, 2003, Si–Nor filed a memorandum in opposition to the Motion to Dismiss. Si–Nor argued that: 1) the facsimile transmission received by the Director on December 5, 2002, satisfied the statutory requirements of HRS § 396–11(a), and that the administrative rules have unreasonably expanded the statute's requirements for contesting a citation by requiring that the Director be served with an "original" notice of contest; 2) "filing" is clerical in nature and that a notice of contest cannot be rejected because of its form; 3) service of the Citation on Hamili, who was not an officer, director, or person authorized to represent Si–Nor, was improper and violated Si–Nor's due process rights, and Si–Nor was not properly notified of the Citation until Uwakwe received the Citation on December 5, 2002; and 4) the Director could not prove that Si–Nor received the Citation on November 16, 2002.

After a hearing on July 14, 2003, the HLRB denied the Director's Motion to Dismiss. On September 3, 2003, the Director filed a motion for reconsideration of the Director's previously filed Motion to Dismiss. In the motion for reconsideration, the Director questioned Si–Nor's claim that Si–Nor had mailed an original notice of contest to HIOSH on December 6, 2002. The Director also argued that in order to satisfy the filing requirement set forth in HRS § 396–11(a), an employer's mailed notice of contest must be actually delivered to and received by the Director. The Director contended that Si–

---

**5.** HRS § 396–11(a) provides:

Any citation, proposed penalty, or order of the director shall be final and conclusive against the employer unless the employer files with the director a written notice of contest of the citation, the abatement period stated in the citation, the proposed penalty, or order within twenty days after receipt of the citation, proposed penalty, or order.

Nor's failure to prove that the Director actually received an original notice of contest from Si–Nor that was postmarked by the twenty-day statutory deadline meant that the HLRB lacked jurisdiction to hear Si–Nor's challenge to the Citation.

At a hearing on September 25, 2003, the HLRB heard testimony from Uwakwe regarding his actions in sending a notice of contest to HIOSH. During cross-examination by the Director's counsel, Uwakwe testified as follows:

Q: Earlier you had said when you got the contest you faxed out—when you got the citation, you faxed out the citation [sic] the same day because the deadline had already—was very close, either that day or the following day, correct?

A: Yes.

Q: So, in other words, you had used whatever date of delivery that you were using and counted 20 days from there, right?

A: I was counting from the day it was supposedly delivered to Si–Nor.

Q: You were using that day as the way to calculate the 20–day deadline?

A: That's what I read from the document.

Q: Pardon me?

A: That was the date I read from the document—not the date [Hamili] sent it to me.

Q: What date were you using to calculate the 20–day deadline?

A: I can't recall the date, but it was 20 days would expire on either the 5th of December or the 6th.

Q: So you were using either November 15th or November 16th?

A: Yes.

Q: And how did you get to that date?

A: Because I did ask [Hamili] when he got that document and how he got it.

Q: So that document was delivered to [Hamili's] house on either November 15th or November 16th, one of those two days?

A: It must have been. It don't know when it was, but he was—I was taking information from him.

Q: And that's what he told you?

A: That's what he told me.

Uwakwe later testified:

I faxed [the notice of contest letter] because when I saw that November date and I counted and I saw the 20 days was about to expire, I did fax it. When I got it, I'm sending you my contest, and based on electronic method of transmitting information these days, it is allowable. I said: I'm going to send you a fax, copy of which you will receive, and then put it in the mail. Because of that, I did not want to just sit back and say: Well, you didn't send it to my address. I wanted to cover all ground and say: I got this on this date and I'm still sending you my contest. I wanted to do heads-up by sending a fax, copy by fax.

After hearing testimony from Uwakwe, the HLRB orally ruled:

The board has conferred on the matter of the timely Notice of Contest, and the board is going to find, number one, credit the testimony of Mr. Uwakwe—credit the testimony of Mr. Uwakwe, that he put an original of the Notice of Contest on December 6th, 2002—put a stamp on it, placed it in the outgoing box, that the postal carrier postmarks typically all outgoing mail from Si–Nor, and when Mr. Uwakwe returned from lunch, the incoming mail had been delivered and the outgoing mail had been picked up. [6] *Therefore, an original postmarked December 6th Notice of Contest was indeed sent to HIOSH.*

Having found that the Notice of Contest is timely, that the preponderance of the evidence, burden has been met by Si–Nor on that issue. We'll proceed to hearing on [the merits of] this matter.

. . . .

The board also will put this in the final, but the board is going to at this time and hereafter adopt the mailbox rule under

**6.** Uwakwe actually testified that when he was *going for* lunch, he noticed the incoming mail had been delivered and the outgoing mail had been picked up.

Hawaii Rules of Civil Procedure and apply that to notices of contest for violation.

(Emphasis added.)

On September 10, 2004, the HLRB issued its written "Decision No. 8, Findings of Fact, Conclusions of Law, and Order" (Decision). In its Decision, the HLRB denied the Director's motion for reconsideration, ruling that Si–Nor had timely filed a notice of contest. With respect to that ruling, the HLRB issued the following findings of fact and conclusions of law:

## FINDINGS OF FACT

. . . .

9. During the course of HIOSH's inspection, Hamili was employed as SI–NOR's project manager and acted as SI–NOR's agent for receiving and delivering documents in response to HIOSH's subpoena. The Board finds the Citation and Notification of Penalty was properly sent by certified mail to Hamili as SI–NOR's agent in Hawaii on November 15, 2002, with a return receipt on November 16, 2002. However, the confusion and uncertainty that arose in this case regarding the filing of SI–NOR's Contest could have been avoided if HIOSH had mailed the Citation and Notification of Penalty directly to SI–NOR's corporate office in California since that information was available to HIOSH.

10. On December 5, 2002, Hamili forwarded the HIOSH Citation and Notification of Penalty by facsimile (fax) and U.S. mail to Uwakwe's office in Rialto, California. [7] Upon receipt, Uwakwe sent SI–NOR's notice of contest to HIOSH dated December 5, 2002 by fax, clearly expressing SI–NOR's intent to appeal the Citation and Notification of Penalty prior to the expiration of the 20–day deadline which fell on December 6, 2002.

11. By the close of business on December 5, 2002, HIOSH received SI–NOR's faxed letter contesting the Citation and Notification of Penalty. HIOSH called SI–NOR's office in California acknowledging receipt, but instructed SI–NOR to send the original notice of contest by mail postmarked no later than midnight on December 6, 2002.

12. On December 6, 2002, Uwakwe received HIOSH's telephone message instructing him to mail the original notice of contest and called HIOSH to verify the message with HIOSH's personnel. The Board credits the testimony of Uwakwe that he put the original notice of contest dated December 5, 2002, in the outgoing mail receptacle before noon on December 6, 2002. When Uwakwe returned from lunch, the envelope containing the original notice of contest had been picked up by the mail carrier.

13. HIOSH denied SI–NOR's notice of contest because it never received the original notice mailed by Uwakwe on December 6, 2002. On February 25, 2003, the Director transmitted SI–NOR's appeal of HIOSH's denial of the notice of contest to the Board.

. . . .

## CONCLUSIONS OF LAW

1. The Board has jurisdiction over this contested case pursuant to HRS §§ 396–3 (Supp.2002) and 396–11.

2. The Board concludes that based on HIOSH's receipt of SI–NOR's notice of contest faxed and dated on December 5, 2002, and Uwakwe's testimony that he mailed the original on December 6, 2002, SI–NOR proved by a preponderance of evidence that its notice of contest was timely. HIOSH's non-receipt of the original notice of contest dated December 5, 2002, does not persuade the Board to conclude otherwise.

(Citation to transcript omitted.)

With respect to the merits of Si–Nor's challenge to the alleged violations set forth in the Citation, the HLRB ruled in favor of the Director and affirmed the violations charged

---

7. Both Hamili and Uwakwe indicated that Hamili forwarded the Citation to Uwakwe via FedEx.

and the penalties imposed by the Director in the Citation.

### C. Circuit Court Proceedings

Si–Nor and the Director both appealed the Decision to the circuit court. Si–Nor challenged the HLRB's decision to affirm the violations and penalties set forth in the Citation, and the Director challenged the HLRB's determination that Si–Nor timely filed a notice of contest.

Pursuant to the parties' stipulation, the circuit court ordered that Si–Nor's appeal (Civil No. 04–1–1844) and the Director's appeal (Civil No. 04–1–1847) be consolidated. After considering briefs filed by the parties, including the HLRB, and hearing oral argument, the circuit court ruled that it lacked jurisdiction over the appeals because Si–Nor had not timely filed a notice of contest. In its April 20, 2005, order dismissing the appeals for lack of jurisdiction, the circuit court noted that it must defer to the Director's interpretation of the DLIR rules as long as that interpretation was "reasonable and not inconsistent with legislation." The circuit court stated that "deference must be given to the DIRECTOR'S interpretation that an original [notice of contest] must be filed and received and that contests may not be filed by facsimile." The circuit court ruled that "[b]ecause a contest was not filed and received, the [HLRB] did not have jurisdiction below," and therefore, the circuit court likewise did not have jurisdiction.

The circuit court entered Final Judgment in favor of the Director and against Si–Nor and the HLRB on April 20, 2005, and this appeal followed.

## II. STANDARDS OF REVIEW

### A. Secondary Appeal

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) (1993) to the agency's decision.

*Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City & County of Honolulu,* 114 Hawai'i 184, 193, 159 P.3d 143, 152 (2007) (citations and brackets omitted). HRS § 91–14(g) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." *Citizens Against Reckless Dev.,* 114 Hawai'i at 193, 159 P.3d at 152 (internal quotation marks, citations, and brackets omitted).

### B. Interpretation of Statutes and Administrative Rules

■ The same general principles that apply to statutory interpretation also apply to interpretation of administrative rules. *Director, Dep't of Labor & Indus. Relations v. Kiewit Pacific Co.,* 104 Hawai'i 22, 29–30 n. 6, 84 P.3d 530, 537–38 n. 6 (App.2004).

In construing statutes, we have recognized that our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool. This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

If we determine, based on the foregoing rules of statutory construction, that the legislature has unambiguously spoken on the matter in question, then our inquiry ends. When the legislative intent is less than clear, however, this court will observe the well established rule of statutory construction that, where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous. Such deference reflects a sensitivity to the proper roles of the political and judicial branches, insofar as the resolution of ambiguity in a statutory text is often more a question of policy than law.

The rule of judicial deference, however, does not apply when the agency's reading of the statute contravenes the legislature's manifest purpose. Consequently, we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted with the statute's implementation.

*In re Water Use Permit Applications*, 94 Hawai'i 97, 144–45, 9 P.3d 409, 456–57 (2000) (internal citations, internal quotation marks, footnotes, brackets, and ellipses omitted; block quote format changed).

## III. DISCUSSION

The circuit court dismissed the consolidated appeals and entered judgment in favor of the Director because the circuit court concluded that the HLRB lacked jurisdiction over Si–Nor's challenge to the Citation. The circuit court ruled that the transmission of Si–Nor's notice of contest to the Director by way of facsimile did not constitute "fil[ing]" under the applicable DLIR rules, as interpreted by the Director, and that the Director's interpretation of his own rules was entitled to deference so long as it was reasonable and consistent with relevant statutory authority.

On appeal before this court, Si–Nor raises a number of points, which we summarize in the following fashion: The circuit court erred in: 1) impliedly deeming service of the Citation at Hamili's residence to be proper; 2) ruling that Si–Nor's facsimile notice of contest was insufficient to perfect its challenge to the Citation; and 3) rejecting the HLRB's determination that Si–Nor timely mailed its notice of contest. We consider each of the these claims in order.

### A. Service of the Citation was Proper

Due process requires "notice and opportunity for hearing appropriate to the nature of the case." *Klinger v. Kepano*, 64 Haw. 4, 10, 635 P.2d 938, 942 (1981) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Si–Nor argues that delivery of the Citation to Hamili's residence was ineffective to constitute notice to Si–Nor and thus did not satisfy the requirements of due process or start the running of the time for Si–Nor to contest the Citation. We turn to examine the procedure used by HIOSH to provide notice that a citation has been issued.

The DLIR has been entrusted with the authority to promulgate and enforce rules and regulations necessary to carry out the purposes of the Hawaii Occupational Safety and Health Law, HRS Chapter 396. HRS § 396–4(a)(1) (1993). The review procedure

established by HRS Chapter 396 provides that a citation shall be final unless "the employer files with the director a written notice of contest of the citation ... within twenty days after receipt of the citation." HRS § 396–11(a).

Title 12 of the Hawaii Administrative Rules (HAR), which pertains to the DLIR, contains rules that explain this review procedure in more detail. HAR §§ 12–51–15 and 12–51–19 provide, in relevant part, as follows:

§ 12–51–15 Proposed penalties.

(a) After or concurrent with the issuance of a citation, and within a reasonable time after the termination of the inspection, the director shall notify the employer by certified mail or by personal service by the safety and health compliance officer of the proposed penalty under the law. Any notice of proposed penalty shall state that the proposed penalty shall be the final order and not subject to review by any court or agency unless, within twenty calendar days from the date of receipt of notice, the employer files a notice of contest in accordance with section 12–51–19 for review of the order in accordance with the law.

. . . .

§ 12–51–19 Employer contests of citation, proposed penalty or both.

Any employer to whom a citation and notice of proposed penalty has been issued may petition the director for review of the citation and notice pursuant to the rules of the appeals board [8] within twenty days of the receipt by the employer of the notice of proposed penalty. Each notice of contest shall specify whether it is regarding the citation, the proposed penalty, or both. This petition shall be an original, and shall be served on the director and must be postmarked, or if not mailed, received by the director within twenty calendar days of the receipt by the employer of the citation

and notice of proposed penalty. If not mailed, the date of receipt by the director shall be the date stamped on the contest by the director. The department will forward a copy of the petition to the appeals board. A de novo hearing shall be held by the appeals board. Copies of each petition shall be posted where they shall be readily observed by all affected employees.

HAR § 12–50–2 defines an "[e]mployer" to mean:

the State and every state agency; each county and all public and quasi-public corporations and public agencies; every person which has any natural person in service; the legal representative of any deceased employer; or *every person having direction, management, control, or custody of any employment, place of employment, or any employee.*

(Emphasis added.) The rules of the Labor and Industrial Relations Appeals Board (LIRAB) referenced in HAR § 12–51–19, *see supra* note 8, are contained in HAR Title 12, Subtitle 7, Chapter 47. HAR § 12–47–18, entitled "Service of process," provides in relevant part:

(c) Documents shall be served personally or, unless otherwise provided by law, by first class mail.

(d) Service upon a party shall be deemed complete upon the occurrence of at least one of the following:

(1) The party or its duly appointed representative is personally served;

(2) The document is delivered to the party's home or its duly appointed representative's office and left with a person of suitable age and discretion; or

(3) The document is properly stamped, addressed, and mailed to the last known address of the party on file with the board or to its duly appointed representative. [9]

■ The evidence before the HLRB showed that Hamili was served with the Cita-

---

**8.** Prior to 2002, the board designated to hear an employer's challenge to a citation and notice of proposed penalty was the Labor and Industrial Relations Appeals Board (LIRAB). HRS §§ 396–3 and 396–11 (1993). Effective May 31, 2002, the Legislature designated the Hawai'i Labor Relations Board (HLRB) as the board to hear an employer's challenge to a citation and notice of proposed penalty. 2002 Haw. Sess. Laws Act

104, § 2 at 299. The definition of "appellate board" for purposes of HAR § 12–51–19, however, was not changed, and under HAR § 12–51–19, "appellate board" still means the LIRAB.

**9.** Unlike the rules of the LIRAB, the rules of the HLRB do not contain a specific rule on service of process. The HLRB rules, however, permit the HLRB to serve a copy of a complaint on a

tion by certified mail delivered on November 16, 2002, in compliance with HAR § 12–51–15(a).[10] The return receipt for the certified mail reflects delivery on November 16, 2002. Hamili testified that Rilveria signed for the Citation and gave it to him and that he placed the Citation into a FedEx envelope for delivery to Uwakwe. Hamili stated that he gave the envelope to a co-worker to take to FedEx "close to a month" before Uwakwe received it. Hamili also testified that when he spoke to Uwakwe about the delay in Uwakwe's receipt of the Citation, Uwakwe could see that Hamili had filled out the "sheet" for the FedEx package, which "was dated ... earlier or close to around" the date reflected on the return receipt of the Citation. Uwakwe testified that he asked Hamili when and how Hamili received the Citation and that Hamili told Uwakwe that the Citation was delivered to Hamili's home on either November 15 or 16. Under these circumstances, we do not believe the fact that Rilveria and not Hamili actually signed for the Citation invalidates service.

Nor did delivery of the Citation to Hamili at his residence rather than to the Si–Nor offices in California render service improper. The Director mailed the Citation by certified mail to the "employer," who, under HAR § 12–50–2, includes every person having control over any Si–Nor employee. Hamili testified that he had control over Si–Nor's employees and was in charge of Si–Nor's business within the State of Hawai'i. Therefore, mailing the Citation to Hamili, who, for the purposes of HRS Chapter 396, was the employer in Hawai'i, was permissible.

Si–Nor's argument that the method of service used in this case violated due process is unavailing. Si–Nor's argument amounts to a claim that, to comply with due process, service must be made on its principal office despite having supervisory employees in charge of its operation in Hawai'i. Si–Nor has provided no authority, and we find none, for this proposition. *See Washington Cedar & Supply Co. v. Washington Dep't of Labor & Indus.*, 137 Wash.App. 592, 154 P.3d 287, 294 (2007) (holding that sending notice of violation to yard manager/safety enforcement officer rather than employer's registered agent was reasonable and constituted sufficient service).

Accordingly, we conclude that Si–Nor was properly served with the Citation, that it received the citation on November 16, 2002, and that mailing the Citation to Hamili's residence did not violate Si–Nor's due process rights.[11]

### B. Si–Nor's Sending of a Notice of Contest By Facsimile Transmission Did Not Satisfy the Filing Requirement

■ Si–Nor contends that a facsimile transmission of its notice of contest to

---

respondent by mail, HAR § 12–41–7, and provide that service of a report and recommended order shall be complete upon mailing. HAR § 12–41–34.

**10.** We note that neither HAR § 12–51–15 nor HAR § 12–47–18 requires restricted delivery. Thus, effective service of a citation does not require that a return receipt be signed by an authorized individual.

We also note that the federal Occupational Safety Health Review Commission has specifically accepted as the date of service the date a citation is signed for by someone other than the addressee. *See Sec'y of Labor v. FM Constr. Co.*, 19 O.S.H. Cas. (BNA) 1925, 2002 WL 1012951 (Rev. Comm'n 2002) (holding that acceptance by sister of the employer's owner of a citation sent by certified mail to an address provided by the owner constituted proper service because it was reasonably calculated to provide employer with knowledge of the citation and notification of the proposed penalty); *Sec'y of Labor v. Creative*

*Gold, Inc.*, 20 O.S.H. Cas. (BNA) 1217, 2003 WL 21026767 (Rev. Comm'n 2003) (noting that the Secretary of Labor cannot control who signs for the mailing, even when a specific individual is named for delivery).

**11.** Si–Nor argues that it was "unreasonable" to serve the Citation on Hamili rather than sending it directly to Si–Nor's California offices because 1) the Director knew Si–Nor had a California address; 2) Hamili had not been authorized by Si–Nor to use his home as an office or to instruct others to send Si–Nor documents to his home address, to accept service, or to keep Si–Nor documents at his home; and 3) Hamili was not part of Si–Nor's management. However, these arguments do not undermine our conclusion that service was in conformity with the DLIR rules. Si–Nor provides no authority for the proposition that the Director was obligated to effect service on Si–Nor's corporate office or that Hamili's representations to HIOSH that documents could be served on him on behalf of Si–Nor should have been ignored.

HIOSH on December 5, 2002, constituted timely filing under HRS § 396–11(a) because a fax should be an acceptable means of providing notice, and that the circuit court erred in finding to the contrary. The Director contends that because transmission of facsimile copies is not specifically allowed by any applicable statute or rule, faxing a notice of contest to HIOSH does not satisfy the filing requirement under HRS § 396–11(a). We agree with the Director.

■ "The right of appeal is purely statutory and therefore, the right of appeal is limited as provided by the legislature and compliance with the method and procedure prescribed by it is obligatory." *In re Tax Appeal of Lower Mapunapuna Tenants Ass'n*, 73 Haw. 63, 68, 828 P.2d 263, 266 (1992) (internal quotation marks, citation, and ellipses omitted).

There is no applicable statute or administrative rule that specifically allows filing of a notice of contest by facsimile. The Director, charged with the authority to promulgate rules for the DLIR, has consistently taken the position in this case that a facsimile submission is not sufficient for a valid notice of contest. HAR § 12–51–19, the administrative rule governing the filing of the notice of contest, specifically directs that the notice of contest "shall be an original." A facsimile is not an original.

In addition, HAR § 12–51–19 explicitly provides that the notice of contest "shall be served on the director." It goes on to state that the notice "must be postmarked, *or if not mailed*, received by the director" within the twenty-day time limit. HAR § 12–51–19 (emphasis added). Under HAR § 12–47–18(c), documents must be served personally or by first class mail, unless otherwise provided by law. HAR § 12–51–19 only provides for mailing as an alternative to personal service of a notice of contest; it does not mention service by means of facsimile transmission. We conclude from the language of HAR § 12–51–19 that the filing of a notice of contest by facsimile is not permitted. *See* 2A N. Singer & J. Singer, *Sutherland Statutes and Statutory Construction* § 47.23, at 412–13 (7th ed. 2007) ("A statute which provides that a thing shall be done in a certain way

carries with it an implied prohibition against doing that thing in any other way."). Accordingly, Si–Nor was not authorized to employ a fax machine to transmit, and the Director was not authorized to accept, a faxed notice of contest. *See AgSouth Farm Credit, ACA v. Bishop*, 333 B.R. 746, 747–49 (D.S.C. 2005) (holding that a notice of appeal submitted via facsimile was not validly filed); *In the Matter of Marshall*, 144 Misc.2d 193, 193–94, 544 N.Y.S.2d 437 (Ct.Cl.1989) (holding that service of claim by fax, which was not authorized by statute, was insufficient to obtain jurisdiction).

In *Love v. College Level Assessment Services, Inc.*, 928 S.W.2d 36, 38 (Tenn.1996), the Tennessee Supreme Court rejected the defendants' argument that their notice of appeal, which had been transmitted by facsimile, was valid. The court observed that "the timely perfecting of an appeal is no mere technical formality: it is in fact a mandatory requirement, and if it is not complied with the court has no jurisdiction over the case." *Id.* The court also noted that a number of problematic issues could arise if it permitted filing via facsimile without a detailed rule governing such filing. *Id.* These issues included when after-hours transmissions would be deemed filed, how technical difficulties in transmissions should be treated, whether user fees should be assessed, and whether facsimile filing should be allowed for documents that require the tender of a filing fee. *Id.* The court concluded that until court procedures and rules have been adopted to govern and control the use of facsimile transmissions, facsimile filing would not be permitted. *Id.* at 38–39.

We agree with the views expressed in *Love*. As the DLIR has not promulgated rules that authorize the filing of a notice of contest by facsimile transmission, the circuit court did not err in ruling that Si–Nor's facsimile transmission did not constitute a valid filing under HAR § 12–51–19.

C.  Si–Nor's Timely Mailing of an Original Notice of Contest Satisfied the Filing Requirement

Although Si–Nor's facsimile transmission did not constitute a valid filing, we conclude

that Si–Nor's mailing of an original notice of contest postmarked on December 6, 2002, before the expiration of the twenty-day filing deadline, was sufficient to satisfy the filing requirement. Thus, the circuit court erred in concluding that it lacked jurisdiction over the consolidated appeals on the ground that the HLRB lacked jurisdiction to consider Si–Nor's notice of contest.

As previously noted, HRS § 396–11(a) provides that a citation issued by the Director becomes final "unless the employer *files* with the director a written notice of contest of the citation ... within twenty days after receipt." (Emphasis added.) Generally, the term "file" implies actual receipt of the document by the intended recipient. *See Black's Law Dictionary* 660 (8th ed.2004) (defining "file" as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record"). However, we conclude that the term "file" is sufficiently indistinct that the Director, pursuant to the DLIR's rulemaking power under HRS § 396–4(a)(1), was authorized to promulgate rules clarifying the term's meaning.

Here, the Director clarified the meaning of the term "file" and established procedures for complying with the filing requirement set forth in HRS § 396–11(a) by promulgating HAR §§ 12–51–15 and 12–51–19. HAR § 12–51–15 provides that in connection with the issuance of a citation, the Director shall serve a notice of proposed penalty on the employer. HAR § 12–51–15 further provides that the notice of proposed penalty must advise the employer that the proposed penalty shall become the final order unless within twenty days of receipt, "the employer *files a notice of contest in accordance with [HAR] section 12–51–19* for review of the order in accordance with the law." (Emphasis added.) Thus, HAR § 12–51–15 defines

the term "file" to mean compliance with HAR § 12–51–19.

HAR § 12–51–19, entitled "Employer contests of citation, proposed penalty or both," establishes the procedures an employer must follow to petition the Director for review of a citation and notice of proposed penalty. It provides in pertinent part:

> This petition shall be an original, and *shall be served on the director and must be postmarked, or if not mailed, received by the director within twenty calendar days of the receipt by the employer of the citation and notice of proposed penalty. If not mailed, the date of receipt by the director shall be the date stamped on the contest by the director.* The department will forward a copy of the petition to the appeals board.

(Emphasis added.)

HAR § 12–51–19 plainly distinguishes between a petition, i.e., a notice of contest, that is filed by mailing and one that is filed in person. To comply with HAR § 12–51–19, a notice of contest filed in person must be an original that is received by the Director within twenty days of the employer's receipt of the citation and notice of proposed penalty. In contrast, an original notice of contest filed by mail does not need to be received by a certain date, but must only be served on the Director and postmarked within twenty days of the employer's receipt of the citation and notice of proposed penalty.

HAR §§ 12–47–18(c) and (d), which apply to notices of contest submitted to the Director under HAR § 12–51–19, provide that documents shall be served personally or by mail. If served by mail, service on a party shall be deemed complete if "[t]he document is properly stamped, addressed, and mailed to the last known address of the party on file with the board or to its duly appointed representative." HAR § 12–47–18(d).[12] Here,

12. We refer to HAR § 12–47–18(d), a rule applicable to the LIRAB, because HAR § 12–51–19 states that the employer may petition the Director for review of a citation and notice of proposed penalty "pursuant to the rules of the appeals board," which is defined to mean the LIRAB. *See supra* notes 8 and 9. The Director argues that we should likewise apply the LIRAB rule HAR § 12–47–12, which in relevant part states: "All pleadings, briefs, and other docu-

ments required to be filed shall be filed with the board during the regular hours of the board. The file stamped date on the document shall be regarded as the date of filing." According to the Director, HAR § 12–47–12 demonstrates that there is a distinction between filing and service and that mere mailing is not enough. We do not agree that HAR § 12–47–12 applies to the filing of a notice of contest. First, the controlling statute, HRS § 396–11(a), requires that the no-

the HLRB, through its oral and written findings, determined that Si–Nor sent an original notice of contest to the Director by mail that was postmarked on December 6, 2002, within the twenty-day filing deadline.[13] Under HAR § 12–47–18(d), Si–Nor's service of the notice of contest on the Director was complete when the notice was mailed on December 6, 2002.

In sum, the Director has promulgated rules clarifying the statutory filing requirement which provide that the requirement may be satisfied by complying with HAR § 12–51–19. Under HAR § 12–51–19, a notice of contest is timely filed if an original notice is served on the Director by mail and is postmarked within twenty calendar days of the employer's receipt of the citation and proposed penalty. Service of the notice of contest is deemed complete upon proper mailing. Si–Nor mailed an original notice of contest to the Director that was postmarked within the twenty-day deadline. Although the Director denied receiving the notice mailed by Si–Nor on December 6, 2002, there is no dispute that on December 13, 2002, the Director received a substitute notice of contest submitted by Si–Nor. Under these circumstances, we conclude that Si–Nor timely filed its notice of contest and that the HLRB and the circuit court had jurisdiction to decide the merits of Si–Nor's challenge to the Citation.[14]

Our interpretation of the applicable DLIR rules and our conclusion that Si–Nor complied with the filing requirement are supported by the actual Citation sent by the Director to Si–Nor. The Citation advises Si–Nor that in order to contest the Citation, Si–Nor is required to *mail* a notice of contest to HIOSH within twenty days. The Citation does not specifically inform Si–Nor that a mailed notice of contest will be ineffective if not received by the Director or that a notice of contest can be filed in person. The Citation reads as follows:

This Citation and Notification of Penalty describes violations of the Hawaii Occupational Safety and Health Law.... You must abate the violations referred to in this Citation by the dates listed and pay the penalties, *unless within 20 calendar days from your receipt of this Citation and Notification of Penalty, you mail a notice of contest to the State of Hawaii Occupational Safety and Health Division (HIOSH) at the address shown above.*

(Emphasis added.)

In our view, the language of the applicable rules is sufficiently plain that we are not required to defer to the conflicting interpretation advanced by the Director in this litigation. *See In re Water Use Permit Applications,* 94 Hawai'i at 145, 9 P.3d at 457 (stating that "we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted with the statute's implementation"). Certainly, pursuant to the DLIR's rulemaking authority, the Director may promulgate a

---

tice of contest be filed with the Director, not the LIRAB. Second, HAR § 12–47–12 conflicts with HAR § 12–51–19, which is a rule that more specifically addresses the procedures for filing a notice of contest. Unlike HAR § 12–47–12, HAR § 12–51–19 permits filing by mail and only requires the date of receipt to constitute the file-stamped date if the notice is not mailed.

**13.** We note that the HLRB, as the fact-finder, is free to reject an employer's uncorroborated claim that it mailed a notice of contest in a timely manner, especially where the purportedly mailed notice is never received by the Director. In this case, however, the HLRB credited Uwakwe's testimony that he mailed an original notice of contest on December 6, 2002. Uwakwe's testimony was corroborated by the undisputed facts that he had sent a copy of the notice to the Director by facsimile transmission on December 5, 2002; that he had received a

message from HIOSH on December 6, 2002, advising him that he was required to mail an original notice postmarked by midnight on December 6, 2002; and that Uwakwe immediately called HIOSH to confirm the message. There was substantial evidence to support the HLRB's finding that Uwakwe had mailed the notice on December 6, 2002.

**14.** We need not decide if the result would be different where a notice of contest is timely mailed but not received by the Director and the Director receives· no notice that the employer intends to contest the citation or proposed penalty for an extended period of time. Here, the evidence established that the Director was aware of Si–Nor's intent to contest the Citation before the twenty-day deadline and actually received a substitute notice of contest within twenty-seven days of Si–Nor's receipt of the Citation.

rule which provides that a notice of contest that is timely mailed, but which the Director does not acknowledge receiving, is ineffective to permit an employer to challenge a citation and proposed penalty issued by the Director. However, in our view, the Director has not done so in the existing rules.

## IV. CONCLUSION

We vacate 1) the Final Judgment filed by the circuit court on April 20, 2005, in Civil No. 04–1–1844 and Civil No. 04–1–1847 and 2) the circuit court's "Order Dismissing Appellant Si–Nor, Inc.'s Appeal Filed October 11, 2004 and Complainant–Appellant Director, Department Of Labor And Industrial Relations' Appeal Filed October 11[,] 2004 For Lack Of Jurisdiction And Entering Judgment For The Director On Both Appeals," filed on April 20, 2005, in Civil No. 04–1–1844 and Civil No. 04–1–1847, and we remand these cases for further proceedings consistent with this opinion.

Concurring and Dissenting Opinion of FUJISE, J.

I concur with parts III A and III B of the majority's opinion but part company with my colleagues regarding part III C as I disagree that the Director's interpretation of his department's rules was so plainly erroneous or contrary to the legislative mandate that it should be disregarded.

It is well-established that the timely filing of an agency appeal is a jurisdictional requirement. *See Assoc. of Apt. Owners of the Governor Cleghorn v. M.F.D., Inc.,* 60 Haw. 65, 68–70, 587 P.2d 301, 304 (1978) (untimely appeal to building appeals board and subsequent appeal to circuit court dismissed for lack of jurisdiction); *Tanaka v. Dep't of Hawaiian Home Lands,* 106 Hawai'i 246, 249, 103 P.3d 406, 409 (App.2004) (untimely appeals to Tax Appeals Board and circuit court dismissed for lack of jurisdiction).

The ability to challenge a HIOSH citation is defined by HRS § 396–11 (1993). Subsection (a) of this statute provides that the citation and penalty shall become final "un-less the employer files with the director a written notice of contest of the citation, ... within twenty days after receipt of the citation" and subsection (g) of the same statute directs that "[u]pon receipt, the director shall advise the appeals board of any notice of contest."

In implementing the statute, the DLIR promulgated[1] HAR § 12–51–19, which provides, with added emphasis,

Any employer to whom a citation and notice of proposed penalty has been issued may petition the director for review of the citation and notice pursuant to the rules of the appeals board within twenty days of the receipt by the employer of the notice of proposed penalty. Each notice of contest shall specify whether it is regarding the citation, the proposed penalty, or both. *This petition shall be an original, and shall be served on the director and must be postmarked, or if not mailed, received by the director within twenty calendar days of the receipt by the employer of the citation and notice of proposed penalty.* If not mailed, the date of receipt by the director shall be the date stamped on the contest by the director. *The department will forward a copy of the petition to the appeals board.* A de novo hearing shall be held by the appeals board. Copies of each contest petition shall be posted where they shall be readily observed by all affected employees.

The Director interpreted the DLIR rule to require that the original notice of contest must actually be received by the Director within the time specified. In my view, this interpretation is consistent with the purposes of the statute and should therefore be honored. *Hawaii Teamsters & Allied Workers, Local 996 v. Dep't of Labor & Indus. Relations,* 110 Hawai'i 259, 265, 132 P.3d 368, 374 (2006); *see also Floyd S. Pike Elec. Contractor, Inc. v. Occupational Safety & Health Review Comm'n,* 576 F.2d 72, 75 (5th Cir. 1978) ("[T]he Secretary's interpretation of an OSHA regulation is entitled to great deference. 'We have held that the promulgator's interpretation is controlling as long as it is one of several reasonable interpretations, al-

1. The DLIR is authorized by HRS § 396–4(a)(1)(1993) to promulgate rules "as may be necessary for carrying out the purposes and provisions of this chapter."

though it may not appear as reasonable as some other.' ").

The Majority provides a cogent rationale for a contrary interpretation of the DLIR's rules. However, the Director's interpretation is also supported by the plain and ordinary meaning of the terms used in the enabling statute. HRS § 396–11(a) requires that the employer "files with the director a written notice of contest." The common understanding of the word "file" means to "deliver a legal document to the court clerk or record custodian for placement into the official record." *Black's Law Dictionary* 660 (8th ed.2004); *see also United States v. Lombardo*, 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916) (" 'Shall file' means to deliver to the office, and not send through the United States mails."), *In re Bryan*, 261 B.R. 240, 244 (9th Cir. BAP 2001) ("A 'filing' occurs when papers are delivered to the actual custody of a proper officer.").

Finally, the requirement of actual receipt makes practical sense. Without actual receipt of the notice of contest, the Director would not know that he must forward the same to the appeals board, as required by HRS § 396–11(g). Indeed, in this case, there was evidence before the HLRB that Si–Nor's December 5, 2002 notice of contest was not received by HIOSH and that the Director was not aware of this December 5, 2002 notice until the hearing before the HLRB. The HLRB apparently believed that the Director had not received this notice as it ruled "HIOSH's non-receipt of the original notice of contest dated December 5, 2002, does not persuade the [HLRB] to conclude" that the notice of contest was not mailed on time.

In short, because the Director's interpretation was not at odds with the intent of the enabling statute, I believe that the failure of the HLRB to give effect to the Director's interpretation of the regulation that actual receipt of the notice of contest was required, was error, and would have affirmed the circuit court's decision to overturn the HLRB's decision on that basis.